HATTON v. NEW YORK, N. H. & H. R. CO.

(Circuit Court of Appeals, First Circuit. November 15, 1919.)

No. 1415.

MASTER AND SERVANT ☞125(1), 217(13)—EVIDENCE IN ACTION FOR DEATH OF SERVANT INSUFFICIENT TO SHOW NEGLIGENCE, BUT SHOWING ASSUMED RISK.

The presence of ice on a station platform, which caused a gangplank placed by trainmen between a car door and the platform to slip, allowing a heavy barrel they were moving over it to fall, by reason of which one of them was killed, *held* not to establish negligence of the company, there being no evidence that it had knowledge of the ice or showing how long it had been there, and deceased, who saw and knew of the ice, *held* to have have assumed the risk therefrom.

In Error to the District Court of the United States for the District of Massachusetts; James M. Morton, Judge.

Action by Anna F. Hatton, administratrix, against the New York, New Haven & Hartford Railroad Company. Judgment for defendant, and plaintiff brings error. Affirmed.

---

☞For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

J. Lyman Gray, of Springfield, Mass. (Morrisey & Gray, of West-field, Mass., on the brief), for plaintiff in error.

John L. Hall, of Boston, Mass., for defendant in error.

Before BINGHAM, JOHNSON, and ANDERSON, Circuit Judges.

BINGHAM, Circuit Judge. This is an action under the federal Employers' Liability Act of April 22, 1908 (chapter 149, 35 Stat. at Large, 65), as amended by the Act of April 5, 1910 (chapter 143, 36 Stat. at Large, 291), by an administratrix to recover for injuries to and the death of her intestate. In the court below a verdict was directed for the defendant, and the plaintiff excepted.

The declaration contains four counts. In the first two counts the negligence charged is that—

"of the officers, agents or employés of said carrier [the defendant] in allowing a barrel of brass to fall so that the plaintiff's intestate was struck upon the head and his skull fractured."

In the third and fourth counts the intestate's injury is alleged to have been caused by—

"a defect or insufficiency, due to the defendant's negligence, in its cars, machinery, appliances, tools, works or other equipment, causing a barrel of brass to fall so that the plaintiff's intestate was struck upon the head and his skull fractured."

In answer to a motion of the defendant to specify more definitely the particulars in which the plaintiff claimed that it was negligent, the plaintiff specified as follows:

"That the officers, agents or employés of the defendant were negligent in allowing a barrel of brass to fall upon the plaintiff's intestate by reason of defects and insufficiencies in the defendant's cars, machinery, appliances, tools, works or other equipment"

—in other words, that she relied on the charge of negligence specified in the third and fourth counts.

The defenses set up were a general denial, contributory negligence and assumption of risk; and the questions presented are (1) whether there was any evidence bearing upon the charge specified from which it could reasonably be found that the defendant was negligent; and, if so, (2) whether any reasonable conclusion could be drawn from the evidence other than that the plaintiff's intestate assumed the risk.

The plaintiff's intestate, Charles J. Hatton, received the injury here complained of on December 4, 1916, while employed by the defendant upon one of its freight trains operating between New Haven, in the state of Connecticut, and Westfield, in the state of Massachusetts. When his injury was received, he and three other trainmen were engaged in removing a barrel of brass weighing some 1,400 or 1,500 pounds from a freight car to a station platform by means of a gangplank. At the time of the accident the three fellow employés were on the freight car pushing the barrel of brass and Hatton was standing on the gangplank pulling on the barrel, and while thus en-

gaged the end of the gangplank resting upon the car was pushed or pulled off the car and tipped, causing the barrel to fall between the car and the platform and throwing Hatton upon the plank or platform, causing the injury to his head, from which he, a week later died.

There was no evidence that the gangplank was insufficient or defective in any particular. It was a wooden plank about 3 feet in width, 5 feet in length and 2½ inches thick. Each end was beveled off and provided with a strip of iron to protect it from wearing out. The distance from the car to the platform was about a foot and a half. It did not appear whether the floor of the car was above or below the station platform. The floors of some of the cars are higher and some are lower than the station platform. The platform was made of wood and was about 120 feet or three cars in length. On the platform was some ice. How long the ice had been there the evidence does not disclose. That its presence on the platform was known to Hatton is shown by the fact that on being inquired of as to how the accident happened he said the plank slipped on some ice. It did not appear who placed the gangplank from the car to the platform. After the gangplank was placed, Wheeler, one of the trainmen, said in the presence of Hatton and the other men, "I don't think the plank will stay there," and Hatton replied, "We will give it a try." It was daylight, all objects were plainly visible, and there was no special hurry about the work of unloading.

Hatton was an experienced trainman and had run on this division for a period of about five years. He was familiar with the loading and unloading of freight cars and with the use of gangplanks in doing such work. He had opened cars, put down planks and unloaded freight many times, and had previously assisted in unloading barrels of brass at the station in question.

The fact that there was ice on the platform would not of itself warrant a jury in finding that the defendant was negligent. To justify such a conclusion it should have appeared that the defendant knew of its presence and had unreasonably failed to remove it, or that the ice had been there such a length of time that, in the exercise of ordinary care, it ought to have known of it and removed it. Smith v. Railroad, 73 N. H. 325, 61 Atl. 359. Under the circumstances here disclosed we think there was no evidence from which reasonable men could conclude that the defendant was negligent.

We are also of the opinion, if it could be said the defendant was negligent, that the only conclusion fair-minded men could draw from the evidence would be that the plaintiff's intestate knew of the danger and appreciated the risk. Seaboard Air Line v. Horton, 233 U. S. 492, 34 Sup. Ct. 635, 58 L. Ed. 1062, L. R. A. 1915C, 1, Ann. Cas. 1915B, 475; Jacobs v. Southern Ry. Co., 241 U. S. 229, 36 Sup. Ct. 588, 60 L. Ed. 970; Boldt v. Penn. R. R. Co., 245 U. S. 441, 38 Sup. Ct. 139, 62 L. Ed. 385.

The judgment of the District Court is affirmed, and the defendant in error recovers its costs in this court.